**DALLAS STAGE EMPLOYEES LOCAL UNION 127, etc.,**
Petitioner–Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD,**
Respondent–Cross–Petitioner.

No. 80–1150.

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 9, 1981.

Hicks, Gillespie & James, P. C., Hal K. Gillespie, Dallas, Tex., for petitioner–cross–respondent.

Elliot Moore, Deputy Assoc. Gen. Counsel, Lawrence E. Blatnik, Washington, D.C., for respondent–cross–petitioner.

Petition for Review and Cross Application for Enforcement of an Order of the National Labor Relations Board.

Before COLEMAN, Chief Judge, CHARLES CLARK and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

The Dallas local of the International Alliance of Theatrical Stage Employees (the International or IATSE) was charged with unfair labor practices under § 8(b)(1)(A) and (2) of the National Labor Relations Act,

29 U.S.C. § 151 *et seq.*[1] The NLRB (the Board) found that the local's threat to recommend withholding of the International trademark if the employer hired a sound mixer who was not a union member was coercive within the meaning of the Act. Since the Union threatened only legal action in protecting the integrity of its trademark, the decision of the Board is unwarranted by law and contrary to other decisions of the Board. We set aside the Board's order.

There is no dispute over the facts. Mulberry Square Productions, a Dallas–based corporation engaging in the production and distribution of motion pictures, began hiring personnel for its upcoming motion picture, "The Double McGuffin" in August, 1977. Terrence Donnelly, the production manager, contacted Bernard Blynder at Blynder's home in Miami, Florida, concerning possible employment as sound mixer for the movie. Blynder indicated his interest in the job, and Blynder and Donnelly began to discuss details of the employment. Blynder told Donnelly that his union membership card had been suspended by the Miami local, and Donnelly informed him that his employment with Mulberry Square was conditional on getting the union card reinstated prior to production of the movie. In November 1977, Donnelly again called Blynder to finalize the employment agreement. He also inquired into Blynder's situation with the union and found that it remained unchanged.

In November of 1977, independent of the hiring of Blynder, Mulberry Square and the Dallas local of the International began negotiations for a new collective bargaining agreement. At the second bargaining meeting, held in late November or early December, Frank Duran, Mulberry Square's chief negotiator, submitted to the Union a list of the crew already hired for the production of "The Double McGuffin." Duran wanted to avoid any problems with the Union on this production and asked the Union's chief negotiator, E. W. Bradford, to look over the list to determine if there were any problems. At the next meeting, Bradford informed Duran that he had checked the crew list and, although Mulberry Square could hire whomever they wished, the Union had problems with two of the names on the list—one of which was that of Bernard Blynder. Bradford objected to Blynder's employment because he did not have a union membership card from an IATSE sound local. Duran, inexperienced in the film industry and in the collective bargaining process, asked about the consequences of hiring someone who was not a union member. Bradford explained that the International has a registered trademark or seal (the "bug") and that the International would permit the producer to place it on a film only if the union is satisfied that the film was produced entirely by IATSE members. Bradford further explained that if the "bug" is not on the film, IATSE projectionists might refuse to run the film or might run it improperly.

1. The relevant portions of the Act are these:
 Section 7, 29 U.S.C. § 157 provides:
 § 157. Right of employees as to organization, collective bargaining, etc.
 Employees shall have the right to self–organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . . .
 Section 8, 29 U.S.C. § 158 provides, in pertinent part:
 § 158. Unfair labor practice
 (a) It shall be an unfair labor practice for an employer–

 \* \* \* \* \* \*
 (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization
 \* \* \* \* \* \*
 (b) It shall be an unfair labor practice for a labor organization or its agents–
 (1) to restrain or coerce (A) employees in the exercise of rights guaranteed in section 157 of this title
 \* \* \* \* \* \*
 (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section . . . .

Blynder was unsuccessful in getting his union membership reinstated. Nevertheless, in later conversations with Bradford, Donnelly insisted on using Blynder as the sound mixer in the upcoming production. Bradford responded that Mulberry Square could hire whomever they wanted, but if they insisted on hiring Blynder, a non–member, he would have to recommend to the International that the "bug" be withheld.

After all efforts to get Blynder's membership reinstated failed, Mulberry Square, fearful of the union withholding its seal, hired a union member to replace Blynder as sound mixer.

The NLRB charged the Dallas Local with unfair labor practices in violation of § 8(b)(1)(A) and (2) of the Act. A hearing was held before an Administrative Law Judge (ALJ), whose decision was adopted by the entire Board. The ALJ found that Bradford's threat to recommend that the International withhold the seal if Blynder was hired was coercive, causing Mulberry Square to discriminate against Blynder by discharging him because he was not a union member. We disagree.

 The union seal or "bug" is a registered trademark of the International, and the International has the authority to grant or deny a producer the right to its exhibition. The International has the right to maintain the integrity of its trademark and issue it only when all of the production crew are union members. The local also has the right, if not the duty, to recommend to the International situations in which it feels the bug should not be issued. Although maintenance of the integrity of the seal has the purpose of promoting the employment of union members under union conditions, this activity is protected by the Act. *NLRB v. Circle Bindery, Inc.*, 536 F.2d 447, 452 (1st Cir. 1976).

 Admittedly, protection of the seal may not be used to justify illegal action on the part of the Union. In *NLRB v. Washington–Oregon Shingle Weaver's District Council (Sound Shingle Co.)*, 211 F.2d 149,

151 (9th Cir. 1954), cited by the ALJ, the court held that the union was entitled to protect and even enjoin the unlawful use of its registered trademark, but could not engage in an unlawful secondary boycott to protect the trademark. Rather than threatening illegal activity, such as a secondary boycott, in the present case Bradford merely described or predicted action which the union was fully entitled to take. In response to Mulberry Square's request for information, Bradford indicated that if Blynder, a non–member, were hired, he would be compelled to recommend that the International withhold the bug. Upon further inquiry, he informed Duran of the possibilities of economic consequences to films lacking the bug. He did not tell Mulberry Square that they could not hire Blynder, and, in fact, carefully insisted that Mulberry Square could hire whomever they pleased. He did not threaten any action beyond the withholding of the bug.

A threat of legal activity by a union has never before been considered violative of the Act. In fact, the Board has consistently upheld a union official's honest statement that he intends to take lawful action as not violative of § 8(b)(1)(A) or (2). *See, e. g. Carpenters Local 2361 (Adams Insulation Co.)*, 248 N.L.R.B. No. 59, 103 L.R.R.M. 1444 (1980) (letter threatening lawful informational picketing, not unlawful recognitional picketing, is not coercive within the meaning of the Act); *Lodge No. 199 of District 12, IAM (Baltimore Rebuilders)*, 235 N.L.R.B. No. 209, 98 L.R.R.M. 1270 (1978) (letter informing employees of lawful termination of participation by employer in union's pension plan as result of decertification of union not coercive).

The Board asserts that *Motion Picture Studio Mechanics, Local 52, International Alliance of Theatrical Stage Employees and Moving Picture Operators v. NLRB (Michael Levee Productions, Ltd.)*, 593 F.2d 197 (2d Cir. 1979) is applicable here. That case also involved the hiring of a sound mixer who was not a union member. There the union official threatened unknown action (of a kind "for me to know") upon the hiring of the non–member, and the threat was found to be coercive. In *Michael Levee*

the union made no mention of withholding the bug, a legal activity, but threatened some unknown action intending to coerce and resulting in the employer's refusal to hire the non—member. Here the union threatened only lawful activity—withholding the bug—if Blynder was hired. Also, Mulberry Square had manifested an intent from the beginning to hire Blynder only if his union membership was reinstated.

The Board puts great emphasis on the numerous occasions on which Bradford repeated his threat to recommend withholding of the bug. In his opinion the ALJ indicated that had there been only one comment, the threat may have been acceptable under the Act. The Board apparently found this to be indicative of the union's motive, or intent, to keep Mulberry Square from hiring Blynder. We regard the Union's objective, whatever it may have been, as irrelevant. As long as a union limits itself to threats of *legal* activity, it may do so for whatever reason it chooses. *See Adams Insulation,* 103 L.R.R.M. at 1446. Under the Act, a union is entitled to make honest statements that it intends to do a lawful thing, especially in response to inquiry by the employer.

ENFORCEMENT DENIED.